BOARD OF SUPERVISORS OF FAIRFAX COUNTY

V.

VIRGINIA ELECTRIC AND POWER COMPANY, ET AL.

December 4, 1981.

Record No. 811095.

Present: All the Justices.

*Edward E. Rose, III, Assistant County Attorney (David T. Stitt, County Attorney,* on brief), for appellant.

*Guy T. Tripp, III; A. Lynn Ivey, III (Lewis S. Minter; Donald G. Owens; Hunton & Williams,* on briefs), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

The question presented in this appeal is whether the State Corporation Commission had jurisdiction under the facts presented to approve the location of an electric transmission line pursuant to Code § 56-46.1.[1]

---

[1] § 56-46.1. *Commission to consider environmental factors in approving construction of electrical utility facilities; approval required for construction of certain electrical transmission lines; notice and hearings.*—Whenever under any provision of law whatsoever, applicable to the Commission, the Commission is required to approve the construction of any electrical utility facility, it shall give consideration to the effect of that facility on the environment and establish such conditions as may

In 1975, Virginia Electric and Power Company (Vepco) filed with the Commission an application for approval of proposed new electrical transmission facilities between the Pleasant View Substation in Loudoun County and the Idylwood Substation in Fairfax County. The proposed facilities included rebuilding an existing 115 kilovolt (kv) line to 230 kv between the Idylwood and Tysons Substations. Code § 56-46.1 requires Commission approval of electrical transmission lines of 200 kv or more.

After the required notice was given to the public and to the Board of Supervisors and Commonwealth's Attorney of Fairfax County (collectively the County), the Commission, on August 11, 1975, entered an order approving the application. The Commission received no objections to the application, and no appeal was taken from the order.

In November, 1977, the County filed with the Commission a petition requesting it to declare null and void the August, 1975 order on the ground that the Commission lacked jurisdiction.

---

be desirable or necessary to minimize adverse environmental impact. In such proceedings it shall receive and give consideration to all reports that relate to the proposed facility by State agencies concerned with environmental protection; and, if ·requested by any county or municipality in which the facility is proposed to be built, to local comprehensive plans that have been adopted pursuant to article 4 (§ 15.1-446.1 et seq.) of chapter 11 of Title 15.1 of the Code of Virginia.

No electrical transmission line of two hundred kilovolts or more shall be constructed unless the State Corporation Commission shall, after at least thirty days' advance notice by publication in a newspaper or newspapers of general circulation in the counties and municipalities through which the line is proposed to be built, and written notice to the governing body of each such county and municipality, approve such line. As a condition to such approval the Commission shall determine that the corridor or route the line is to follow will reasonably minimize adverse impact on the scenic and environmental assets of the area concerned. If, prior to such approval, any interested party shall request a public hearing the Commission shall, as soon as reasonably practicable after such request, hold such hearing or hearings at such place as may be designated by the Commission. *This section shall apply to such transmission lines for which rights-of-way acquisitions have not been completed as of April eight, nineteen hundred seventy-two.* In any such hearing the public service company shall provide adequate evidence that existing rights-of-way cannot adequately serve the needs of said company. For purposes of this section, "interested parties" shall include the governing bodies of any counties or municipalities through which the line is proposed to be built, and persons residing or owning property in each such county or municipality and "environmental" shall be deemed to include in meaning "historic."

Approval of a transmission line pursuant to this section shall be deemed to satisfy the requirements of § 15.1-456 and local zoning ordinances with respect to such transmission line. (Emphasis added.)

Vepco moved to dismiss the petition and, following oral arguments, the Commission, on March 4, 1981, granted the motion. This appeal of right ensued.

Vepco had acquired easements for the proposed power line corridor prior to April 8, 1972. However, Vepco's rights-of-way across three parcels contained voltage and pole height restrictions which made it impossible to build a 230 kv line. In 1976 and 1977, Vepco acquired rights-of-way for the 230 kv transmission line across these three parcels.[2]

Code § 56-46.1 requires the Commission to determine that proposed transmission line corridors "will reasonably minimize adverse impact on the scenic and environmental assets of the area concerned." However, the section applies only to "transmission lines for which rights-of-way acquisitions have not been completed as of April eight, nineteen hundred and seventy-two."

The County contends that the Commission is without jurisdiction because "the rights-of-way had been acquired prior to April 8, 1972." Asserting that the phrase "rights-of-way" as used in the statute describes "the physical corridor or strip of land itself," the County concludes that the rights acquired by Vepco in 1976 and 1977 did not constitute "rights-of-way acquisitions" within the meaning of § 56-46.1. Therefore, it reasoned that "since it is undisputed that the strip of land or corridor over which the proposed 230 kv line is to be constructed has existed prior to April 8, 1972, as a route for transmission lines, the Commission was without jurisdiction to authorize construction."

Vepco responds that the County's interpretation of "rights-of-way" is too narrow and restrictive. The company asserts that the term includes both the physical corridor or route and the legal right of passage over the land of another. It further argues that the two meanings are not mutually exclusive but "are interwined," and that "both meanings should be utilized in determining the scope of the statute and the jurisdiction of the State Corporation Commission under it."

In enacting Code § 56-46.1, the General Assembly recognized that environmental concerns should be considered in constructing high voltage transmission lines. Moreover, in vesting jurisdiction with the Commission to approve such lines, the General Assembly specifically preempted local zoning ordinances. This not only

---

[2] One owner-grantor was Fairfax County.

evinces the General Assembly's view that such construction should be governed by statewide uniform regulations but also takes into account the practicality that such lines often traverse several counties.

The language in issue was designed to protect those utilities which had acquired rights-of-way, but had not started construction, before the act was passed. The County's interpretation would exempt any transmission line from statewide control, as long as the utility used an existing corridor. There is nothing in the language, history, or spirit of the section to support such an interpretation, and we reject it.

In the present case, the evidence is undisputed that some of the existing rights-of-way could not be used for the proposed facilities. They had certain restrictions which had to be removed before the new line could be constructed. Since acquisition of the requisite rights-of-way for the construction of the proposed line had not been completed prior to April 8, 1972, we hold that the Commission had jurisdiction over Vepco's application, and the Commission's order will be affirmed.

*Affirmed.*